Minute Order Form (rev. 12/90)

# UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

| Name of Assigned Judge or Magistrate Judge | Gettleman | Sitting Judge if Other Than Assigned Judge | |
|---|---|---|---|
| Case Number | 00 C 1036 | Date | Jan. 29, 2001 |
| Case Title | Chicago District Council v Faith Builders, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd-party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(10) [Other docket entry]

Memorandum opinion and order entered.
Accordingly, plaintiffs' motion for summary judgment is granted.
Defendant is directed to submit time records.
Parties are directed to submit a final judgment order.

(11) [For further detail see order attached to the original minute order form.]

No notices required, advised in open court.
No notices required.
Notices mailed by judge's staff.
Notified counsel by telephone.
Docketing to mail notices.
Mail AO 450 form.
Copy to judge/magistrate Judge.

date docketed: JAN 30 2001

Document # 34

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHICAGO DISTRICT COUNCIL OF CARPENTERS PENSION FUND, CHICAGO DISTRICT COUNCIL OF CARPENTERS WELFARE FUND, the CHICAGO AND NORTHEAST ILLINOIS DISTRICT COUNCIL OF CARPENTERS APPRENTICE AND TRAINEE PROGRAM FUND, <br><br> EARL J. OLIVER, JEFFREY ISAACSON, KENNETH BORG, ROBERT QUANSTROM, DOUGLAS BANNISTER, RICHARD A. BAGGIO MELVIN GRAY, DOMINICK J. VELO, THOMAS D. COLEMAN, JR. AND STANLEY PEPPER, as Trustees of the CHICAGO DISTRICT COUNCIL OF CARPENTERS PENSION AND WELFARE FUND, <br><br> EARL OLIVER, JEFFREY ISAACSON, BRUCE A. NELSON, KENNETH BORG, C. DAVID PEPPER, RICHARD A. BAGGIO, WILLIAM O'NEIL, DOMINICK J. VELO, AND TODD HARRIS as Trustees of the CHICAGO AND NORTHEAST ILLINOIS DISTRICT COUNCIL OF CARPENTERS APPRENTICE & TRAINEE PROGRAM FUND, <br><br> Plaintiffs, <br><br> v. <br><br> FAITH BUILDERS, INC., an Indiana Corporation, <br><br> Defendant. | No. 00 C 1036 <br><br> Judge Robert Gettleman <br><br><br> DOCKETED <br><br> JAN 3 0 2001 |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, the Chicago District Council of Carpenters Pension, Welfare, and Apprentice and Trainee Program Funds, and their trustees, have filed a one count amended complaint pursuant to §502 of ERISA and §301 of the Taft-Hartley Act (29 U.S.C. §§1132 and 185) against defendant, Faith Builders, Inc. Plaintiffs allege that defendant breached its Collective Bargaining Agreement

34

("CBA") with the Chicago District Council of Carpenters Union ("the Carpenter's Union"). Plaintiffs have filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56. For the following reasons, plaintiffs' motion is granted.

## FACTS

Article 3.5 of the September 15, 1997, CBA states as follows regarding subcontracting work to other employers:

> If an EMPLOYER, bound by this Agreement, contracts or subcontracts any work covered by this Agreement to be done at the jobsite of the construction, alteration, painting or repair of a building, structure or other work to any person or proprietor who is not a signatory to this Agreement, the Employer shall require such subcontractor to be bound by all the provisions of this Agreement, or the EMPLOYER shall maintain daily records of the subcontractor's or the subcontractor's Employees jobsite hours and be liable for payments to the Chicago District Council of Carpenters Welfare Fund, the Chicago District Council of Carpenters Pension Fund, the Chicago District Council of Carpenters Apprentice and Trainee Program, as provided in Articles XII, XIII, XIV of this Agreement.

In January 2000, defendant subcontracted work at the Best Western Hotel on 82nd Street and Cicero in Cook County, Illinois ("Best Western job"), to Filotto Construction, Inc. ("Filotto"). At the time, Filotto had an agreement with the United Union of Roofers, Waterproofers and Allied Workers ("the Roofer's Union"), and contributed benefits to that union for the work its employees performed under the subcontract for the Best Western job. Defendant did not require Filotto to be bound by defendant's CBA with the Carpenter's Union, nor did defendant maintain daily records of, or pay into plaintiffs' funds for, Filotto's work on the Best Western job.

Article 1.1 of the CBA of the Carpenter's Union defines the work covered by that agreement as including that of "Shinglers."[1] Further, Article 24.3 of the CBA states that, "all asphalt, wood, plastic, metal or composition roofing applied to any and every type of roof shall be the work of a

---

[1] Article 1.1 states in full:

The Bargaining Unit shall consist of all Journeymen, Foremen, Apprentices and Trainees engaged in work at the construction site covered by the occupational jurisdiction of the "UNION" including, but not limited to, the milling, fashioning, joining, assembling, erection, fastening or dismantling of all material of wood, plastic, metal, fiber, cork, and composition and all other substitute materials; the handling, erecting, installing and dismantling of machinery and equipment, hydraulic jacking and raising, and the manufacturing of all material where the skill, knowledge and training of the Employees are required, either through the operation of machine or hand tools. The Bargaining Unit shall also consist of all Journeymen, Foremen, apprentices and Trainees engaged in work as Carpenters and Joiners, Millwrights, Pile Drivers; Bridge Dock and Wharf Carpenters, Divers, Underpinners, and Timbermen and Core-drillers; Ship Wrights, Boat Builders and Ship Carpenters, Joiners and Caulkers, Cabinet Makers, Bench Hands, Stair Builders, Millmen, Wood and Resilient Floor Layers, and Finishers, Carpet Layers, **Shinglers**, Siders, Insulators, Acoustic and Dry Wall Applicators; Shorers and House Movers; Loggers, Lumber and Sawmill Workers; Casket and Coffin Makers; Furniture Workers, Reed and Rattan Workers; Shingle Weavers, Box Makers, Railroad Carpenters and Car Builders and Show, Display and Exhibition Workers and Lathers, regardless of material used; and all those engaged in the operation of wood working or the machinery required in the fashioning, milling or manufacturing of products used in the trade, or engaged as helpers to any of the above divisions or subdivisions, and the handling, erecting and installing material on any of the above divisions or subdivisions, and the handling, erecting and installing material on any of the above divisions or subdivisions; burning, welding, rigging and the use of any instrument or tool for layout work, incidental to the trade. When the term "Carpenter or Joiner" is used, it shall mean all the subdivisions of the Trade. **However, the Union agrees that it will not interfere with the existing practices of other unions affiliated with the Building Trades.**

(Emphasis added.)

3

shingler." The subcontract between defendant and Filotto for the Best Western job described the work to be performed as follows:

> Furnish labor to install Alcoa drip edge on gable ends. Install Certalon Teed Winterguard at gutter edges and valleys. Roff with Ownes Corning BrownBlend Oakridge 25 year shingles, install roof vents. Install lead flashing on soil stacks. Install flashing as needed. Remove all roofing debris from roof and premises.

Thus, the work performed on the Best Western job involved shingling.[2]

## SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the whole record and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992). A genuine issue of material

---

[2] Plaintiffs' Local Rule 56.1(a)(3) Statement says, "The work subcontracted to Filotto at issue involved shingling." Defendant's Local Rule 56.1(b)(3) Statement responds, "Defendant disputes that the work subcontracted to Filotto . . . is work to be performed by a "shingler" as included in the [Carpenter's Union CBA]. Instead, the work subcontracted to Filotto . . . was roofing work and was the application of shingles where used for roofing laid with necessary metal flashing to be water-tight, which is work excluded from the [Carpenter's Union CBA]." Because defendant fails to refute plaintiff's assertion that the Best Western job involved shingling, that fact is deemed admitted. See Fed. R. Civ. P. 56(e). (Indeed, defendant's own description of the work makes clear that the Best Western job did involve shingling.) Defendant's further assertion that the work performed on the Best Western job is excluded from the Carpenter's Union CBA, will be addressed in the argument section below.

4

fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Stewart v. McGinnis, 5 F.3d 1031, 1033 (7th Cir. 1993).

Summary judgement is especially appropriate when a dispute concerns an interpretation of a written contract. Beverage Indus. Local No. 744 Health and Welfare Fund v. Quality Beers Ltd. Partnership, 58 F. Supp. 2d 910, 913 (N.D. Ill. 1999) (citing ICEBU v. Hyster-Yale Materials Handling, Inc., 83 F.3d 930, 932-33 (7th Cir. 1996). Where the language of an agreement is unambiguous, its meaning may be determined as a matter of law. Illinois Conference of Teamsters and Employers Welfare Fund v. Mrowicki, 44 F.3d 451, 458 (7th Cir. 1994); see also Young v. North Drury Lane Prod., Inc., 80 F.3d 203, 205 (7th Cir. 1996) (stating that courts "must enforce the terms of a collective bargaining agreement when those terms are unambiguous").

## DISCUSSION

Plaintiffs assert that this is a clear-cut breach of contract case. According to plaintiffs, the Best Western job involved "shingling" and the Carpenter's Union CBA covers "shinglers"; thus, the subcontracting clause in the CBA required defendant to either require Filotto to be bound by the CBA or it required defendant to keep records of, and pay into plaintiffs' funds for, the work performed by Filotto. Plaintiffs' conclude that, because defendant did neither, it breached the CBA.

Defendant raises two issues to avoid the CBA with respect to the Best Western job. First, defendant argues that the specific type of shingling performed on the Best Western job fits more aptly within the type of work performed by members of the Roofer's Union than within the type of

work performed by members of the Carpenter's Union.[3] This is significant, defendant argues, because the following sentence at the end of Article 1.1 of the CBA exempts from its "Bargaining Unit" any work which is also performed by members of another union: "However, the Union agrees that it will not interfere with existing practices of other unions affiliated with the Building Trades." According to defendant, by including this sentence in its CBA, the Carpenter's Union "agreed not to interfere with the practices of the Roofer's Union" thereby, "exclud[ing] the work subcontracted to Filotto from the work covered by the [CBA]." As a result, defendant concludes that the CBA was not breached since it did not apply to the Best Western job.

Plaintiffs deny that defendant's interpretation of the Article 1.1 sentence is accurate, basing their criticism on well-founded principles of contract interpretation. First, plaintiffs argue that defendant's interpretation of that sentence contradicts the plain language of the CBA, which includes "Shinglers" as part of its "Bargaining Unit." Second, plaintiffs say that the Article 1.1 sentence is general and cannot override the specific reference to "Shinglers." Third, plaintiffs note that even if the Article 1.1 sentence specifically limits the actions of the Carpenter's Union, it still does not apply to plaintiffs under the *expressio unius est exclusio alterius* theory, making that sentence inapplicable to the instant case regardless of its meaning. And, finally, plaintiffs cite Central States, Southeast, & Southwest Areas Pension Fund, et al. v. Gerber Truck Service, Inc., 870 F.2d 1148 (7th Cir.

---

[3] According to defendant, the Best Western job involved more than just shingling; it involved "the application of shingles used for roofing and laid with flashing to be water-tight, thereby forming a roof." Thus, defendant contends, while shingling in general may be included in the CBA, this particular method of shingling is more akin to the work of a roofer, as explained in the Standard Working Agreement between the Chicago Roofing Contractors' Association, Inc. and the Roofer's Union, which defines its jurisdiction as including, *inter alia*, "All asbestos shingles where used for roofing of any size, shape or color, and in any manner laid with necessary metal flashing to make water-tight."

1989), for support that "Trust Funds are entitled to enforce collective bargaining agreements and trust agreements without regard to issues that might arise under labor-management relations law (other than 29 U.S.C. §186), understandings or defenses applicable to the original parties."

The court agrees, and notes further that defendant's interpretation of the sentence in Article 1.1 of the CBA is unsupported both factually and legally. It is well-settled that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

The undisputed material facts show that defendant signed the CBA with the Carpenter's Union and, as a result, promised to take certain actions when subcontracting work covered by the CBA to non-union employees. The CBA clearly and unambiguously covers shingling, which the court has found includes the work in question. Defendant chose to subcontract the Best Western job to Filotto, but failed to abide by the terms of the CBA. At no time did the Carpenter's Union interfere with the "existing practices" of the Roofer's Union. The Best Western job was completed without incident by Filotto, and now plaintiffs are merely enforcing defendant's liability for breaching Article 3.5 of the CBA. Defendant cannot avoid responsibility for its breach by offering an unsupported interpretation of one sentence of the CBA which, if followed, would decimate the meaning of all that remains. Thus, the court finds defendant's interpretation of the Article 1.1 sentence unreasonable and therefore insufficient to render the contract ambiguous. Central States,

Southeast & Southwest Areas Pension Fund v. Kroger Co., 73 F.3d 727, 732 (7th Cir. 1996) (stating that a CBA "is ambiguous if it is susceptible to more than one reasonable interpretation").

Next, defendant attempts to convince the court that the instant case raises a "jurisdictional dispute" between the two unions, which "is more appropriate to be consider [sic] by the National Labor Relations Board." The court disagrees. To begin, it is irrelevant whether the work performed on the Best Western job fits more aptly within the type of work performed by members of the Roofer's Union. Dual jurisdiction between unions over a particular type of work is not uncommon. See Miron Constr. Co. v. International Union of Operating Eng'rs, Local 139, 44 F.3d 558, 561 (7th Cir. 1995) (finding that the jurisdictional dispute between two unions over mason-tending forklift work is "neither uncommon in the industry, nor unknown to this court"). Moreover, the existence of dual jurisdiction among unions over a particular type of work is not equivalent to a jurisdictional dispute. Jurisdictional disputes arise "between two or more groups of employees over which is entitled to do certain work." Miron, 44 F.3d at 566 (citing NLRB v. Radio & Television Broadcast Engineers Union, 364 U.S. 573, 579 (1961)); see also Miron, 44 F.3d at 561 n. 11 (explaining that disputes between two unions as to which has "the superior claim to 'work in dispute'" are determined in §10(k) NLRB hearings pursuant to 29 U.S.C. §160(k)).

The Roofer's Union had no "claim" to the Best Western job at all because it had no agreement with defendant. Instead, the Roofer's Union had a collective bargaining agreement with Filotto, the subcontractor defendant chose to hire for the Best Western job. Having made the choice to hire Filotto rather than a subcontractor who would hire Carpenter's Union members, defendant faced another choice: defendant could require Filotto to be bound by the Carpenter's Union CBA, or defendant could keep records of, and make payments to plaintiffs' funds for, the work performed

8

by Filotto. Had defendant required Filotto to be bound by the Carpenter's Union CBA, Filotto would then have to decide whether to hire members of the Carpenter's Union or the Roofer's Union to perform the Best Western job, and whether it needed to contribute to one or both of the unions' funds for that work. Whether *this* would have created a jurisdictional dispute between the Carpenter's Union and the Roofer's Union, or whether that potential dispute would have been resolved to everyone's satisfaction, will never be known because defendant did not perform its obligation under the CBA to require Filotto to be bound by the CBA.[4] Absent such performance, Article 3.5 of the CBA required defendant to maintain records of the subcontractor's work and be "liable for payments to" plaintiffs' funds.

Thus, there is no jurisdictional dispute between the Carpenter's Union and the Roofer's Union in the instant case; rather, defendant is attempting to create the guise of a jurisdictional dispute to avoid liability for its breach of the Carpenter's Union CBA.

---

[4] The court notes further that even if the Roofer's Union *did* have a valid claim to the Best Western job, the work was not "in dispute" since the Carpenter's Union did not attempt to obtain the Best Western job and it did not interfere with Filotto's ability to complete that job. Moreover, even if the Roofer's Union *did* have a valid claim to the Best Western job, and even if the Carpenter's Union *had* brought about a §10(k) hearing to determine which union had the superior claim, the court would *still* find that the breach of contract issue in this case "is separable from any jurisdictional dispute" between the two unions, and does not relieve defendant's responsibility to fulfill its obligations under the Carpenter's Union CBA. Miron, 44 F.3d at 564. In cases such as this, "characterizing the [contractual] dispute as jurisdictional would unfairly avoid the agreed upon penalty for breach of the subcontracting clause." Miron, 44 F.3d at 564 (quoting Hutter Constr. Co. v. International Union of Operating Eng'rs, Local139, 862 F.2d 641, 644-45 (7th Cir. 1988)); see also Laborers Int'l Union, 318 N.L.R.B. 809 (1995) (explaining that §10(k) should not be used to defeat a collective-bargaining representative's peaceful efforts at enforcing a subcontracting clause through proper channels).

## CONCLUSION

For the foregoing reasons, the court grants plaintiffs' motion for summary judgment. Defendant is directed to submit forthwith time records for the work performed by Filotto on the Best Western job. The parties are directed to submit a final judgment order at the status hearing set for February 15, 2001.

**ENTER:** **January 29, 2001**

_____
**Robert W. Gettleman**
**United States District Judge**